Filed 8/20/21  Oroville Union High School Dist. v. Public Employment Relations Bd. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| OROVILLE UNION HIGH SCHOOL DISTRICT, | |
| Petitioner, | C089108 |
| v. | (PERB Case No. SA-CE-2843-E) |
| PUBLIC EMPLOYMENT RELATIONS BOARD, | |
| Respondent; | |
| OROVILLE SECONDARY TEACHERS ASSOCIATION, | |
| Real Party in Interest. | |

The Public Employment Relations Board (PERB) issued a decision concluding that under the Educational Employment Relations Act (the EERA),[1] union bargaining team members are entitled to reasonable periods of compensated released time for

---

[1] The EERA is codified at Government Code section 3540 et seq.  (See *City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1294.)  Undesignated statutory references are to the Government Code.

1

meeting and negotiating, including reasonable time to prepare for the negotiations. PERB also determined that the Oroville Union High School District (the District) committed an unfair labor practice by failing to bargain in good faith.

The District challenges PERB's decision in a petition for writ of extraordinary relief filed with this court pursuant to section 3542, subdivisions (b) and (c), and rule 8.728 of the California Rules of Court. The District contends (1) PERB incorrectly interpreted the words "meeting and negotiating" in section 3543.1, subdivision (c) to include reasonable preparation time, and (2) the record does not support PERB's finding that the District changed its policy or violated the collective bargaining agreement and thereby committed an unfair labor practice by failing to bargain in good faith.

Because interpretation of the relevant statutes falls squarely within PERB's legislatively designated field of expertise, and because PERB's interpretation is not clearly erroneous, we will affirm PERB's statutory interpretation in this case. But substantial evidence does not support PERB's finding that the District committed an unfair labor practice. Accordingly, pursuant to section 3542, subdivision (c), we will modify PERB's decision to strike the finding of an unfair labor practice and affirm the decision as modified.

BACKGROUND

Teachers at the District are represented by the Oroville Secondary Teachers Association, CTA/NEA (the Association). The District and the Association were parties to a collective bargaining agreement. Under the collective bargaining agreement, the District agreed to provide five substitute teachers, paid for by the District, to substitute for the Association's bargaining team members so that the bargaining team members could "attend negotiations, impasse proceedings, and fact-finding hearings." PERB identified the time taken by the bargaining team members under this provision of the collective bargaining agreement as Negotiations Leave, and we will do the same.

2

The collective bargaining agreement did not limit the number of days of Negotiations Leave. It also did not expressly provide for, or deny, Negotiations Leave for the time the Association's bargaining team members prepared for negotiations. PERB therefore determined that whether Negotiations Leave could be used for preparation time was a question of statutory law under the EERA.

Section 3543.1, subdivision (c) of the EERA requires school districts to provide their employees who are union bargaining team members "reasonable periods of released time without loss of compensation when meeting and negotiating . . . ." And section 3540.1, subdivision (h) defines "meeting and negotiating" as "meeting, conferring, negotiating, and discussing by the exclusive representative and the public school employer in a good faith effort to reach agreement on matters within the scope of representation . . . ."

The collective bargaining agreement provided for two other types of leave relevant to this matter: Association Leave and Personal Necessity Leave. The collective bargaining agreement provided each of the Association's bargaining team members three days of Association Leave each year for Association business. The cost of Association Leave, including the cost of a substitute teacher, was borne by the Association. In addition, the collective bargaining agreement provided that each employee could use seven days of the member's sick leave for cases of personal necessity. Before the instant dispute arose, the Association's bargaining team members had used Association Leave or Personal Necessity Leave to prepare for negotiations.

The District tracked teachers' absences using a computerized system called AESOP. Teachers contacted the District's employee responsible for finding substitute teachers (the sub-finder), and the sub-finder would enter the teacher's absence into AESOP, assigning it one of the predefined types of leave to be used. Consistent with the collective bargaining agreement, AESOP allowed the Association's bargaining team members three days per year of Association Leave and unlimited Negotiations Leave, in

3

addition to other types of leave available to the District's employees, such as Personal Necessity Leave.

As part of ongoing negotiations, the District and the Association scheduled negotiations for February 2016. The Association's bargaining chair and lead negotiator, Scott Martin, contacted the District's sub-finder by e-mail and told her that the Association's bargaining team would meet on a specified day in January to prepare for the negotiations and would need substitute teachers that day. The e-mail did not specify what type of leave was to be used. The sub-finder entered the leave into AESOP as Negotiations Leave. Martin later e-mailed the sub-finder and changed the preparation day to a later day in January.

When the Association's five bargaining team members met for negotiation preparation as scheduled, they learned that their substitute teachers had been cancelled because a District employee noticed they were scheduled for Negotiations Leave on a day when there was no negotiation. Following communications between the Association's bargaining team members and a District human resources technician, the technician changed the leave type for three of the bargaining team members to Association Leave. But because two of the Association's bargaining team members had already exhausted their three days of Association Leave, the technician changed the leave type for those two bargaining team members to Personal Necessity Leave. The technician made this designation because she believed it was the only way to avoid designating their absences as unpaid.

The Association's business agent, Mark Leach, subsequently asked that the District give release time for the Association bargaining team's negotiation preparation. It was the first time the Association asserted that time preparing for negotiation constituted Negotiations Leave under section 3543.1, subdivision (c). Later that month, Leach sent the District a letter making the same claim and demanding that the District

4

reinstate the Personal Necessity Leave for the two bargaining team members. The District did not respond to the letter.

The Association filed an unfair practice charge and PERB issued a complaint against the District. After an administrative law judge held a hearing and issued a proposed decision, both parties filed a statement of exceptions with PERB. We need not describe the administrative law judge's decision because our review is of PERB's ultimate decision. (§ 3542, subd. (b).)

PERB considered two questions relevant to our review: (1) whether time to prepare for negotiations is included in "meeting and negotiating" under section 3543.1, subdivision (c), and (2) whether the District made a unilateral change to its existing policy when it changed the type of leave for two of the members of the Association's bargaining team to Personal Necessity Leave.

Concerning the meaning of "meeting and negotiating" eligible for released time under section 3543.1, subdivision (c), PERB began with the statutory definition of those words in section 3540.1, subdivision (h). It then considered its past decisions interpreting released time under section 3543.1, subdivision (c).

In *Magnolia School District* (1977) EERB Decision No. 19 [1977 PERB LEXIS 12], PERB, then known as EERB, examined whether an employer's limitation of released time to 30 minutes of nonteaching time at the end of the school day was consistent with section 3543.1, subdivision (c). EERB determined that the school district's restrictive policy about released time was inconsistent with the Legislature's intent under section 3543.1, subdivision (c). It wrote: "An analysis of Section 3543.l[, subdivision] (c) indicates that the Legislature contemplated, at least in some circumstances, that some released time during the instructional day as well as during the one-half hour noninstructional workday would be appropriate." (*Id*. at p. 9.)

In *Sierra Joint Community College District* (1981) PERB Decision No. 179 (<https://www.perb.ca.gov/wp-content/uploads/decisionbank/0179E.pdf> (as of Aug. 19,

2021)), the members of the union bargaining team arranged their teaching schedules so that two afternoons per week were free for negotiations. They proposed that the school district give the bargaining team members a reduction of their normal teaching loads to compensate for the time spent in negotiations, but the school district refused to bargain on the issue, arguing that the bargaining team could only ask for released time for when they were actually negotiating. (*Id*. at pp. 1-3.) When the union filed an unfair practice charge, a hearing officer determined that released time was available only for when bargaining team members were actually meeting and negotiating, citing the definition of "meeting and negotiating" in section 3540.1, subdivision (h). The hearing officer wrote: "[R]eleased time should not be construed generally to extend the released time concept to include time off from employment duties which do not conflict with negotiation sessions." (*Id.* at pp. 3-4, and attached decision of hearing officer, p. 10.) But PERB rejected the hearing officer's determination, stating: "In our view, the phrase ["meeting and negotiating"] is intended to permit teacher negotiators to receive released time for periods spent in the negotiating process. How much of this total time span is subject to the requirement of section 3543.l depends, of course, on what is 'reasonable.' But we find in this section no requirement that the time employees are excused from duty without loss of compensation must precisely coincide with time actually spent negotiating." (*Id*. at p. 5.) In other words, PERB interpreted the words "meeting and negotiating" in section 3543.1, subdivision (c) to encompass reasonable time spent in the negotiating process.

Consistent with *Sierra Joint Community College District*, PERB concluded in this case: "The . . . statement that statutory released time categorically excludes preparation time deviates from our broad interpretation of 'meeting and negotiating' in EERA section 3543.1, subdivision (c) as including the entire negotiating process."

In reaching its decision in the instant case, PERB disapproved its decision in *Burbank Unified School District* (1978) PERB Decision No. 67 (<https://perb.ca.gov/wp-

6

content/uploads/0067E.pdf> (as of Aug. 19, 2021)). In that case PERB said the school district did not violate section 3543.1, subdivision (c) when it refused to grant released time to the union's bargaining team members for rest and recuperation after a session that ended at 3:00 a.m. on a weekday. (*Burbank Unified School District,* at pp. 1-3.) PERB wrote: "Meeting and negotiating includes the time spent at the negotiating table. It includes mediation and factfinding, which are continuations of the negotiating process. It also includes caucusing, which is an integral part of the process. Meeting and negotiating does not include the time necessary to prepare for negotiations. Nor, under normal circumstances, does it include rest and recuperation time after a negotiations session is concluded." (*Id*. at p. 5.) However, in this case, PERB stated: "We have thus rejected the very narrow construction of 'meeting and negotiating' that *Burbank* suggests, preferring a more nuanced understanding that collective bargaining is a process and that the time employees are excused from duty without loss of compensation need not 'precisely coincide' with the time actually spent in face-to-face negotiations." (Citing *Sierra Joint Community College District, supra,* PERB Decision No. 179, p. 5.)

PERB explained that "it would elevate semantics over function to categorically distinguish between time spent in 'caucus' and time denominated as 'negotiations preparation' without considering the facts of each case." And "[a]rbitrarily differentiating between the compensability of caucus time and preparation time without examining the surrounding circumstances would not advance the efficiency of negotiations or harmonious labor relations."

PERB therefore concluded: "[T]ime necessary to prepare for negotiations is a part of the negotiations process and, thus, qualifies for statutory released time under EERA section 3543.1, subdivision (c), subject to reasonableness." Based on this holding, PERB found that the District violated section 3543.1, subdivision (c) by not providing a reasonable amount of released time under section 3543.1, subdivision (c) for the Association's bargaining team members to prepare for negotiations.

In addition, PERB determined that the District committed an unfair labor practice when the human resources technician changed the leave of two members of the Association's bargaining team from Negotiations Leave to Personal Necessity Leave. PERB deemed this a unilateral change by the District of a matter subject to bargaining because the collective bargaining agreement gave to each employee the right to decide whether to take Personal Necessity Leave. According to PERB, the actions of the human resources technician altered the terms of the collective bargaining agreement.

Based on its decision, PERB ordered the District to cease and desist from "[d]enying [the Association's] bargaining team members a reasonable amount of released time to prepare for negotiations," "[u]nilaterally changing policy by requiring [the Association] members to use Personal Necessity Leave to participate in Association business," "[i]nterfering with the rights of bargaining unit members to be represented by [the Association]," and "[d]enying [the Association] its right to represent bargaining unit employees."

DISCUSSION

I

The District contends PERB incorrectly interpreted the words "meeting and negotiating" in section 3543.1, subdivision (c) to include reasonable preparation time.

As the California Supreme Court explained, "[i]t is settled that '[c]ourts generally defer to PERB's construction of labor law provisions within its jurisdiction. [Citations.] ". . . PERB is 'one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect.' [Citation.]" [Citations.] We follow PERB's interpretation unless it is clearly erroneous. [Citations.]' . . . [I]nterpretation of a public employee labor relations statute ' "falls squarely within PERB's legislatively designated field of expertise," ' dealing with public

8

agency labor relations." (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 911-912 (*Boling*).)

The words "meeting and negotiating," along with the definition of those words, were included in the original enactment of the EERA in 1975. In 1981, PERB established the precedent that "the phrase ['meeting and negotiating'] is intended to permit teacher negotiators to receive released time for periods spent in the negotiating process," subject only to a reasonableness requirement. (*Sierra Joint Community College District, supra,* PERB Decision No. 179, p. 5.) Thus, for 40 years PERB has interpreted "meeting and negotiating" as encompassing the entire "negotiating process," which need not "precisely coincide with time actually spent negotiating." (*Ibid*.)

Since 1981, the Legislature has amended the EERA and section 3540.1 many times, but it has never changed the statute to narrow or alter PERB's interpretation of meeting and negotiating. (See, e.g., Stats. 1999, ch. 828, § 5; Stats. 2000, ch. 893, § 1; Stats. 2003, ch. 190, § 1; Stats. 2011, ch. 674, § 1; Stats. 2012, ch. 162, § 54.) Moreover, the parties do not cite us to any court decision narrowing PERB's interpretation of meeting and negotiating. PERB's interpretation of meeting and negotiating as encompassing the entire negotiating process has been in place for decades, and its determination in this case that meeting and negotiating includes reasonable preparation time is consistent with that interpretation.

Although PERB previously indicated that meeting and conferring did not include preparing for negotiations (*Burbank, supra,* PERB Decision No. 67), it was not clearly erroneous for it to change its position in a manner consistent with its longstanding conclusion that meeting and negotiating encompasses the entire negotiating process.

Because interpretation of the relevant statutes falls squarely within PERB's legislatively designated field of expertise (*Boling, supra,* 5 Cal.5th at p. 912), and because PERB's interpretation is not clearly erroneous, we will affirm PERB's statutory interpretation in this case.

9

II

The District also claims the record does not support PERB's finding that the District changed its policy or violated the collective bargaining agreement and thereby committed an unfair labor practice by failing to bargain in good faith.

Section 3543.5, subdivision (c) makes it unlawful for a public school employer to "[r]efuse or fail to meet and negotiate in good faith with an exclusive representative." The collective bargaining agreement between the District and the Association provides that an employee may take Personal Necessity Leave "at his/her election."

PERB has held:  "[A] unilateral policy change, or implementation of a new policy will be considered a 'per se' violation of the duty to bargain in good faith where:  (1) the employer took action to change existing policy or implement a new policy; (2) the policy change concerned a matter within the scope of representation; (3) the action was taken without giving the exclusive representative notice or opportunity to bargain over the change; and (4) the change has a generalized effect or continuing impact on terms and conditions of employment.  [Citation.]" (*Los Angeles Unified School District* (2017) PERB Decision No. 2518, p. 13, < https://perb.ca.gov/wp-content/ uploads/ decisionbank/decision-2518E.pdf> (as of Aug. 19, 2021).)

PERB concluded here that, when the District's human resources technician changed the leave designation of two of the bargaining team members from Negotiations Leave (to which they were not entitled) to Personal Necessity Leave so that they would still be paid for that day, the District changed its existing policy of allowing employees to choose whether to take Personal Necessity Leave and the change in policy had a generalized effect or continuing impact because the District claimed the change in leave designation was consistent with the collective bargaining agreement.

Based on our review of the record, we conclude there is insufficient evidence that the District made a unilateral policy change that had a generalized effect or continuing impact when, or after, the District's human resources technician changed the leave

10

designation of two of the bargaining team members.  Although it is undisputed that the technician changed the leave designation for two individuals, the record does not include substantial evidence of a generalized effect or a continuing impact.  The finding is not supported by this record.

DISPOSITION

PERB's decision is modified to strike the finding of an unfair labor practice.  The decision is affirmed as modified.  The parties shall bear their own costs in this proceeding.  (Cal. Rules of Court, rule 8.493(a).)


                                                       /S/
                                          MAURO, Acting P. J.


We concur:


    /S/
MURRAY, J.


    /S/
RENNER, J.